UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Shaun N.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 2:18-cv-1481-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his applications[1] for disability insurance and supplemental security income benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

## I.    ISSUES FOR REVIEW

A.    Did the ALJ commit harmful error in rejecting the opinions of treating physicians Dinelle Pineda, M.D., and Jeffrey Dassel, M.D.?

B.    Did the ALJ commit harmful error in discounting plaintiff's testimony regarding the severity of his physical impairments?

---

[1] Plaintiff asserted an amended onset date of October 23, 2015. AR 277. The Administrative Law Judge's decision lists the onset date as October 15, 2014. AR 19. Plaintiff has maintained the amended onset date in the Opening Brief, Dkt. 10 at 2, n. 1, and refers to this discrepancy as an inadvertent mistake. On remand, this needs to be clarified and confirmed.

ORDER REVERSING AND REMANDING DENIAL OF
BENEFITS - 1

## II. DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The ALJ assesses the claimant's residual functional capacity ("RFC") to determine, at step four, whether the plaintiff can perform past relevant work, and if necessary, at step five to determine whether the plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of proof at step five to show that a significant number of jobs that the claimant can perform exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(e), 416.920(e).

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "'more than a mere scintilla'" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court considers in its review only the reasons the ALJ identified and may not affirm for a different reason. *Id.* at 1010. Furthermore, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citations omitted).

A. The ALJ Erred in Rejecting Dr. Pineda's and Dr. Dassel's Opinions

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). When a treating or examining physician's opinion is contradicted, an ALJ must provide specific and legitimate reasons for rejecting it. *Id.* In either case, substantial evidence must support the ALJ's findings. *Id.*

Dr. Pineda examined plaintiff on October 23, 2015. AR 1005-10. Dr. Pineda opined that plaintiff was markedly limited in his ability to sit, stand, walk, lift, and carry due to hip and knee arthritis. AR 1006. Dr. Pineda opined that plaintiff was unable to meet the demands of even sedentary work. AR 1007.

Dr. Dassel was Plaintiff's treating doctor. *See* AR 999-1001, 1022-1141. Dr. Dassel opined that plaintiff could stand/walk for less than two hours in an eight-hour day, sit for less than two hours in an eight-hour day, and lift or carry up to ten pounds rarely. AR 1015. Dr. Dassel opined that plaintiff would need unscheduled rest breaks, and would be absent three or more days per month due to his pain. AR 1015-16.

The ALJ gave little weight to Dr. Pineda's and Dr. Dassel's opinions. AR 24. The ALJ reasoned that the doctors' opinions (1) were inconsistent with the objective medical evidence, (2) were inconsistent with plaintiff's receipt of primarily conservative treatment, and (3) relied on plaintiff's report of factors contributing to his pain, which were not consistent. AR 25. The ALJ further reasoned that Dr. Pineda's opinions were inadequately supported because her treatment notes contained minimal findings. *Id.*

1. Inconsistency with the Objective Medical Evidence

The ALJ erred in rejecting the opinions of Dr. Pineda and Dr. Dassel as inconsistent with the objective medical evidence. An ALJ "cannot simply pick out a few isolated instances" of medical health that support her conclusion, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016). The record contains x-rays and MRIs showing significant disc abnormalities. *See* AR 1011-12, 1067, 1128-29, 1147, 1216, 1318, 1342, 1368. Plaintiff's doctors documented symptoms such as visible discomfort, slow gait, limp, and difficulty going from seated to standing and vice versa. *See* AR 849, 1095, 1105, 1111, 1126, 1132, 1137, 1141. The ALJ erred in rejecting the opinions of Dr. Pineda and Dr. Dassel based on a few instances of normal gait, sensation, and range of motion given the overall record of plaintiff's symptoms.

### 2. Inconsistency with Receipt of Conservative Treatment

The ALJ similarly erred in rejecting the opinions of Dr. Pineda and Dr. Dassel on the view that plaintiff received conservative treatment. Plaintiff received, among other treatment, steroid injections in his back and hip. AR 1187-88, 1308. This is not conservative treatment. *See Garrison*, 759 F.3d at 1015 n.20 ("[W]e doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment."). The ALJ inaccurately described plaintiff's treatment, and erred in rejecting the opinions of Dr. Pineda and Dr. Dassel based on that description.

### 3. Reliance on Plaintiff's Inconsistent Reports

The ALJ further erred in rejecting the opinions of Dr. Pineda and Dr. Dassel based on plaintiff's alleged inconsistent reporting of factors contributing to his pain. An

ALJ errs when she rejects a treating or examining doctor's opinions "by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan*, 528 F.3d at 1199-1200; *see also Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (holding that "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion"). Again, the record contains imaging and clinical observations supporting the doctors' opinions. *See supra* Part II.A.1. Substantial evidence does not support the ALJ's conclusion that Dr. Pineda and Dr. Dassel relied on plaintiff's reports more heavily than the objective medical evidence.

### 4. Inadequate Support from Minimal Findings

Finally, the ALJ erred in rejecting Dr. Pineda's opinions as inadequately supported by her minimal exam findings. The ALJ reasoned that Dr. Pineda did not document whether plaintiff had strength deficits, gait abnormalities, or decreased sensation. AR 25. Even where a treating physician's opinion is brief and conclusory, an ALJ must consider its context in the record. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding the ALJ erred in finding a treating doctor's opinion "conclusory" and supported by "little explanation," where the ALJ "overlook[ed] nearly a dozen [treatment] reports related to head, neck, and back pain"). As discussed above, the record contained objective documentation of plaintiff's condition, such as MRIs and clinical observations of symptoms. *See supra* Part II.A.1. The ALJ consequently erred in rejecting Dr. Pineda's opinions as inadequately supported by her clinical findings.

In sum, the ALJ failed to give specific and legitimate reasons for rejecting the opinions of Dr. Pineda and Dr. Dassel. The ALJ's errors must be considered harmful because plaintiff's RFC would likely have been different had the ALJ properly considered these doctors' opinions. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that an error is harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability determination"). The ALJ's ultimate nondisability determination accordingly lacks substantial evidentiary support. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040-41 (9th Cir. 2007) (holding that the ALJ's RFC assessment and step five determination were not supported by substantial evidence where the ALJ's RFC and hypotheticals to the vocational expert failed to include all of the claimant's impairments).

B.  <u>The ALJ Erred in Evaluating Plaintiff's Testimony</u>

In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo*, 871 F.3d at 678. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim,* 763 F.3d at 1163. If the first step is satisfied, and there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ provides specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

Plaintiff testified that he has difficult sitting, standing, and walking due to pain in his back, knees, and hips. *See* AR 291, 298-99. The ALJ found that plaintiff met the first step of the testimony assessment process, but that he had not met the second. *See* AR 22. The ALJ gave five reasons for this determination: First, plaintiff's testimony

regarding the severity of his symptoms was inconsistent with the objective medical evidence. *Id.* Second, plaintiff received only conservative treatment, suggesting his pain was not as severe as alleged. AR 23. Third, plaintiff stopped working, or, more accurately, receiving unemployment benefits, because he exhausted his eligibility for unemployment rather than because of his alleged impairments. *Id.* Fourth, plaintiff made inconsistent statements regarding his substance use. *Id.* Fifth, plaintiff participated in activities that were inconsistent with the severity of symptoms he alleged. AR 24.

      1. <u>Inconsistency with the Objective Medical Evidence</u>

  The ALJ erred in rejecting plaintiff's testimony as inconsistent with the objective medical evidence. Although an ALJ may consider the medical evidence in evaluating the severity of a claimant's pain, "'an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.'" *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)) (alteration in original). The ALJ's analysis here mirrored her analysis of the objective medical evidence relative to the opinions of Dr. Pineda and Dr. Dassel. *See* AR 22, 25. The ALJ's analysis accordingly fails for the same reasons. *See supra* Part II.A.1.

  The ALJ attempted to bolster her reasoning by noting that plaintiff "alleges that he spends most of his time laying down. Yet, there is little to no evidence of effects of this such as reduced strength or atrophy in the lower extremity muscles." AR 22. In reaching this conclusion, the ALJ went beyond her recognized level of expertise. *See Moghadam v. Colvin*, No. C15-2009-TSZ-JPD, 2016 WL 7664487, at *6 (W.D. Wash. Dec. 21, 2016); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges,

including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. . . . The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong.") (internal citations omitted). Whether plaintiff would be expected to show a measurable level of reduced strength or atrophy based on the time he spent lying down is not a commonly-established established medical fact, and the ALJ erred in rejecting plaintiff's testimony based on her assumptions.

### 2. Inconsistency with Conservative Treatment

The ALJ further erred in rejecting plaintiff's testimony regarding the severity of his pain as inconsistent with his receipt of conservative treatment. An ALJ may rely on conservative treatment in discounting a claimant's symptom testimony. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). But, as explained above, steroid injections are not conservative treatment. *See Garrison*, 759 F.3d at 1015 n.20; *see also Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (holding the ALJ erred in rejecting the claimant's testimony based on receipt of "conservative" treatment when she received, among other things, epidural injections in her neck and back). The ALJ thus erred in rejecting plaintiff's testimony on this basis.

### 3. Receipt of Unemployment Benefits

The ALJ's next reason for rejecting plaintiff's testimony fails because it is too vague. An ALJ must do more than state a general finding; she must make specific findings supported by substantial evidence to reject the plaintiff's testimony. *See Burrell*, 775 F.3d at 1138. The ALJ reasoned that plaintiff received unemployment benefits—

which required him to state that he was available for full-time work—up to his alleged amended onset date, and testified that he stopped receiving these benefits because they ran out. *See* AR 23, 291. The ALJ then made a conclusory finding that "the evidence does not reflect a substantial decline in his condition" since the time when plaintiff's benefits ran out, indicating that his impairments were not the reason he stopped being available for full-time work. *See* AR 23.

But this finding is not supported by the record, which contains evidence that plaintiff's condition worsened: Dr. Pineda evaluated plaintiff on October 23, 2015, the alleged amended onset date, and opined that his back and hip conditions were severe enough to prevent him from working. *See* AR 1005-10. The ALJ did not explain how she concluded that plaintiff's condition did not worsen when Dr. Pineda found that plaintiff could not meet even sedentary work demands. Given the ALJ's errors in analyzing Dr. Pineda's opinions, the Court concludes that the ALJ also erred in rejecting plaintiff's testimony based on his receipt of unemployment benefits up to the alleged amended onset date.

### 4. Remaining Reasons and Harmless Error

The ALJ's last two reasons—plaintiff's inconsistent statements and inconsistency between his testimony and daily activities—are supported by substantial evidence, but the reasoning is not legally supported. Plaintiff made inconsistent statements about his drug use, but that is more relevant to his general truthfulness than to the severity of his back pain symptoms. ALJs must focus on whether a claimant's alleged symptoms are consistent with the evidence rather than whether he or she is a truthful person. *See* Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); *see also*

*Trevizo*, 871 F.3d at 678 n.5 (explaining that assessments of a plaintiff's symptom testimony should not "delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness").

Similarly, plaintiff engaged in activities that arguably could be inconsistent with the severity of symptoms alleged, such as traveling to Tennessee and attending orchestra performances. *See* AR 293-95. Yet the circumstances show plaintiff was homeless when he traveled to Tennessee (leading to a reasonable inference that at least one potential reason for traveling to see his family was that he needed shelter), and he experienced pain during this trip to see his sick mother. AR 293-94. And the record contains minimal information on the details surrounding the orchestra performances plaintiff attended. *See* AR 295 (plaintiff testified that the building where he lives offers free orchestra tickets to veterans with PTSD and he attended a couple of these free shows – leading to a reasonable inference that the orchestra music may have been helpful to plaintiff as a military veteran). The Court is not convinced that a reasonable ALJ would have reached the same nondisability determination had she properly analyzed the medical evidence and opinions, and these two reasons for rejecting plaintiff's testimony, which are weak at best, do not outweigh the ALJ's more fundamental errors. *See Burrell*, 775 F.3d at 1140 (holding that "one weak reason," even if supported by substantial evidence, "is insufficient to meet the 'specific, clear and convincing' standard" for rejecting a claimant's testimony) (internal quotation marks and citation omitted). The ALJ therefore harmfully erred in discounting plaintiff's testimony regarding the severity of his symptoms.

C. Remand for Further Proceedings

Plaintiff asks the Court to remand this matter for further administrative proceedings. *See* Pl. Op. Br. (Dkt. # 10) at 12. The Court agrees that this is the appropriate remedy. *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (holding that if an ALJ makes an error and the record is uncertain or ambiguous, the court should remand to the agency for further proceedings). Questions remain as to plaintiff's functional limitations, and the availability of work for a person with those limitations.

## III. CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred when she determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings. The ALJ is directed to reevaluate plaintiff's symptom testimony, and the opinions of Dr. Pineda and Dr. Dassel. The ALJ shall reevaluate plaintiff's RFC and the relevant steps of the disability evaluation, and conduct further proceedings as necessary to reevaluate the disability determination in light of this opinion.

Dated this 16th day of January, 2020.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER REVERSING AND REMANDING DENIAL OF
BENEFITS - 11